IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**KENNETH MUHAMMAD,**

**Plaintiff,**

v.

CIVIL ACTION NO. 2:18cv20

**NORFOLK SOUTHERN RAILWAY CO.,**
**Formerly Known as Norfolk & Western**
**Railway Co.,**

**Defendant.**

## *MEMORANDUM OPINION AND ORDER*

This matter comes before the Court on Norfolk Southern Railway Company's ("Defendant") Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12 (b)(1), to dismiss the lawsuit of Kenneth Muhammad ("Plaintiff"). Having reviewed the Parties' filings in this case, the Court finds this matter is ripe for judicial determination. For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On May 19, 2016, Plaintiff was working with the Norfolk Terminal Carpenter gang deconstructing, removing, and installing bridge ties on the east approach span of the South Branch Lift Bridge ("Bridge"), which crosses over the Elizabeth River. Compl. at 2. Specifically, Plaintiff worked as a Third Rate Carpenter in Defendant's Bridge and Building Department from 2008 until May 2016. ECF No. 7. Defendant is a railroad corporation

1

organized and existing under the Commonwealth of Virginia. Compl. at 1. Defendant owns the Bridge and considered a maritime employer. ECF No. 7.

Plaintiff states that while performing his duties on the Bridge, Plaintiff had to cross a wooden "catwalk" walkway platform and a portion of the wooden walkway gave way under the Plaintiff. Compl. at 2. Plaintiff was able to grab on to the hand rails to prevent his fall into the Elizabeth River below. *Id.* During this incident, Plaintiff was hit in the head with at least one beam from the Bridge, he suffered serious and permanent injuries to his knees, and he suffered spinal injuries. *Id.* at 2-3. He also had to have knee surgery as a result of this incident. *Id.* at 3.

Plaintiff files this action pursuant to the Federal Employers' Liabilities Act ("FELA").[1] *Id.* at 1. In the Complaint, Plaintiff claims that Defendant negligently: 1) failed to exercise reasonable care to provide Plaintiff with a safe place to work; 2) failed to provide Plaintiff with safe conditions in which to work; 3) failed to properly inspect the bridge's walkways or catwalks and failed to maintain the walkways in safe condition for Plaintiff to perform his assigned job assignment; and 4) failed to comply with Defendant's own written safety and operating rules relating to such bridge and track maintenance and inspection work. *Id.* at 3.

---

[1] Under the FELA, employers are liable for injuries of its employees when the employer is a "common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, . . ." 45 U.S.C. § 51 (1939). An employee falls under the FELA when "[a]ny employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce . . . ." *Id.* A "common carrier" by railroad means "one who operates a railroad as a means of carrying for the public." *Edwards v. Pacific Fruit Express Co.*, 390 U.S. 538, 540 (1968). To determine if an entity is a common carrier under the FELA, the court looks at the following factors: (1) whether the entity is actually performing rail service; (2) whether the service being performed is part of the total rail service contracted for by a member of the public; (3) whether the entity is performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad or by a contractual relationship with a railroad and hence such entity is deemed to be holding itself out to the public; and (4) whether remuneration for the services performed is received in some manner, such as a fixed charge from a railroad or by a percent of the profits, from a railroad. *See Willard v. Fairfield Southern Co.*, 472 F.3d 817, 822 (11th Cir. 2006).

Plaintiff originally filed this matter in Norfolk Circuit Court. ECF No. 7. Plaintiff then voluntarily nonsuited the matter after Defendant filed a Plea in Bar on the issue that the Longshore and Harbor Worker's Compensation Act ("LHWCA") provides exclusive jurisdiction over Plaintiff's claim and the court lacked subject matter jurisdiction. *Id.*

On January 12, 2018, Plaintiff, through counsel, filed a Complaint against Defendant in this Court. ECF No. 1. On February 7, 2018, Plaintiff filed a Motion for Partial Summary Judgment. ECF Nos. 3-4. On February 15, 2018, Defendant filed this instant Motion to Dismiss, requesting that the Court dismiss Plaintiff's Complaint because the Court lacks subject matter jurisdiction over Plaintiff's action and the LHWCA has exclusive jurisdiction. ECF Nos. 6-7. Defendant filed a Response to Plaintiff's Motion for Partial Summary Judgment on February 21, 2018. ECF No. 8. On February 27, 2018, Plaintiff filed a Reply to the Motion for Partial Summary Judgment and a Response to the Motion to Dismiss. ECF No. 10. On March 2, 2018, Plaintiff filed a Motion for Hearing on the Motion for Partial Summary Judgment and Motion to Dismiss. ECF No. 11. On March 5, 2018, Defendant filed a Reply to the Motion to Dismiss. ECF No. 12. On May 25, 2018, Plaintiff filed a Motion for Discovery Use of Prior State Court Action Depositions. ECF No. 14.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action if the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Unless a matter involves an area over which federal courts have *exclusive* jurisdiction,[2] a plaintiff may bring suit in federal

---

[2] *See* 28 U.S.C. § 1333 (1949) (federal courts have exclusive jurisdiction to hear admiralty, maritime, and prize cases); 28 U.S.C. § 1334 (2005) (federal courts have exclusive jurisdiction to hear bankruptcy cases and proceedings).

court only if the matter involves a federal question arising "under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331 (1980), or if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1) (2011).

The court assumes that all factual allegations in the complaint are true if it is contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). However, if the factual basis for jurisdiction is challenged, the plaintiff has the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Plaintiff bears the burden of proving that subject matter jurisdiction exists by a preponderance of the evidence. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009). To determine whether subject matter jurisdiction exists, the reviewing court may consider evidence outside the pleadings, such as affidavits or depositions, *Adams*, 697 F.2d at 1219, or whatever other evidence has been submitted on the issues. *GTE South Inc. v. Morrison*, 957 F. Supp. 800, 803 (E.D. Va. 1997). A party moving for dismissal for lack of subject matter jurisdiction should prevail only if material jurisdictional facts are not in dispute and the moving party is entitled to prevail as matter of law. *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768. Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### III. DISCUSSION

Pursuant to Defendant's Motion, Defendant contends that the Court does not have subject

4

matter jurisdiction over this matter because the LHWCA provides the exclusive remedy for Plaintiff's claim rather than the FELA.

LHCWA liability is the exclusive remedy for railroad workers in maritime employment who attempt to assert FELA claims. *See Pa. R.R. Co. v. O'Rourke*, 344 U.S 334, 338 (1953) ("The later Harbor Workers' Act . . . covered such injuries on navigable water and made its coverage exclusive."); *see also* 33 U.S.C. § 902(3) (2009); *see also* 33 U.S.C. § 905(a) (1984). Under the LHCWA, courts must address the "situs" and "status" requirements. *P.C. Pfeiffer Co. v. Ford*, 444 U.S.C. 69, 73 (1979).

The "situs" requirement discusses whether an employee's injuries occurred on the navigable waters of the United States. *P.C. Pfeiffer Co.*, 444 U.S. at 73. Under the LHCWA, an employee's injury must occur "upon navigable waters of the United States (including any adjoining pier, wharf, drydock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)." 33 U.S.C. § 903(a) (1996); *see also* 33 U.S.C. § 902(4) (2009). The United States Coast Guard declared that the waters flowing under and past the South Branch Bridge are navigable. *See* Navigation and Navigable Waters, 33 C.F.R. § 117.1 (2007) ("This subpart describes general and special drawbridge operating regulations that apply to the drawbridges across the navigable waters of the United States . . . ."). Specifically, the South Branch Bridge shall open on signal during Coast Guard mandated hours to facilitate and aid the safe navigation of maritime traffic under the South Branch Bridge. *See* 33 C.F.R. § 117.997 (2014); *see also* 33 U.S.C. § 530 (1946) ("provisions of this subchapter shall apply only to bridges over navigable waters of the United States, the construction of which is approved after August 2, 1946, . . . .").

Prior to the 1972 LHWCA amendments, bridge construction and demolition workers employed over navigable waters were covered under the LHWCA. *LeMelle v. B.F. Diamond Constr. Co.*, 674 F.2d 296, 298 (4th Cir. 1982). The Fourth Circuit held that a plaintiff "working over navigable waters on a bridge designed in part as an aid to navigation, is engaged in maritime employment, and is therefore an employee within the meaning of the [LHWCA]." *Id.* The LHCWA also covers employees who were injured while on land or areas adjacent to navigable waters. *See Dir., Office of Workers' Comp. Programs v. Perini N. River Assocs.*, 459 U.S. 297, 299 (1983); *but see, e.g., Sidwell v. Express Container Servs., Inc.*, 71 F.3d 1134, 1139 (4th Cir. 1995), *cert. denied*, 518 U.S. 1028 (1996) ("[W]e hold that an area is "adjoining" navigable waters only if it "adjoins" navigable waters, that is, if it is "contiguous with" or otherwise "touches" such waters.").

The "status" requirement addresses whether the employee was engaged in maritime employment at the time of his injuries. *See P.C. Pfeiffer Co.*, 444 U.S. at 73-74; *Price v. Norfolk & W. Ry. Co.*, 618 F.2d 1059, 1060 (4th Cir. 1980) (holding that the LHWCA covered a railway employee injured while painting support structure equipment used to load grain onto ships because the repair of machinery and equipment essential to the movement of maritime cargo fell under the LHWCA). Land-based work may constitute maritime employment, and therefore subject to the LHWCA, if the employee was involved in the essential or integral elements of the loading or unloading process. *See Chesapeake & Ohio Ry. Co. v. Schwalb*, 493 U.S. 40, 45 (1989) (explaining that coverage is not limited to employees who are denominated "longshoremen" or who physically handle cargo) (stating that the LHWCA jurisdiction applied to land-based maintenance employees); *see also Ne. Marine Terminal Co. v. Caputo*, 432 U.S.

249, 267 (1977).

Plaintiff argues that the FELA provides the remedy for Plaintiff's injuries versus the LHWCA. Plaintiff contends that although the Bridge is over navigable waters, it is not "upon" navigable waters within the meaning of the LHWCA. Specifically, the Bridge is erected on the subsoil and attached to the banks. Plaintiff suffered injuries while working on an "extension of land" over navigable waters as the Bridge where the injury occurred is spatially separated by more than five miles from a coal terminal, Lambert's Point. ECF No. 10 at 5. The facts show that Northern Southern does not customarily engage in loading, unloading, or repairing of vessels at the Bridge. *Id.* at 8. Ultimately, Plaintiff contends that the facts do not provide sufficient evidence to satisfy the "situs" requirement under the LHWCA. Plaintiff acknowledges that Defendant validly states that Plaintiff's railroad maintenance work includes some work at Defendant's maritime terminal, and clearly satisfies the maritime employment requirement under LHWCA. *Id.* at 11. However, because the facts do not satisfy the "situs" requirement, Plaintiff argues that the Court does not need to address the "status" requirement and Plaintiff is entitled to pursue his FELA remedy.

Defendant claims that the LHWCA provides the exclusive remedy for Plaintiff's injuries and not the FELA. Defendant notes that the Parties do not dispute that the Bridge, upon which Plaintiff works, is over navigable waters of the United States. This leads Defendant to contend that Plaintiff's injuries therefore occurred on navigable waters and satisfies the "situs" requirement. Defendant next argues that the facts of this case adequately satisfy the "status" requirement because Plaintiff's work constitutes maritime employment. Plaintiff's work relates to the overall process for loading and unloading for nearby transloading facilities. Precisely,

Plaintiff's employment aids in the navigation of maritime traffic by ensuring the Bridge can operate properly so ships and vessels can load and unload at their respective locations when relying on access to the South Branch of the Elizabeth River. Plaintiff "was actively involved in rebuilding portions of the South Branch Bridge, including replacing worn railroad ties." ECF No. 7 at 8. If the railroad ties were not replaced and maintained periodically, the Bridge would fall into despair and hinder maritime navigation and rail traffic trying to reach "nearby transloading facilities for an indefinite period of time until repairs could re-open it." *Id.* Therefore, Plaintiff's employment satisfies the second requirement for "status," and confirms that the LHWCA provides the exclusive remedy for Plaintiff's injuries.

The Court now addresses the "situs" requirement in this matter. The United States Coast Guard specifically declared that the body of water and bridge at issue in this case—the Elizabeth River flowing under and past the South Branch Bridge—is navigable water and constitutes a bridge over navigable waters. *See* 33 C.F.R. § 117.1. The Parties do not dispute that the Bridge, upon which Plaintiff was working at the time of his alleged injuries, is located on and over navigable waters of the United States. The LHWCA's use of the word "upon" navigable waters does not exclude employees working "over" navigable waters. *See, e.g., LeMelle*, 674 F.2d at 298. The "situs" requirement includes employees working over navigable waters on bridges designed as an "aid to navigation." *Id.* It is reasonable to assume that the LHWCA would also include coverage of those employees that work on the bridges constructed over declared navigable waters designated in the LHWCA. *See, e.g.,* 33 U.S.C. § 530 (stating that this subchapter applies to bridges over navigable waters); *see also LeMelle*, 674 F.2d at 298 (explaining that workers over navigable workers on a bridge are covered under the LHWCA).

Specifically, railroad maintenance employees that work on the Bridge facilitate and safely aid in the navigation of the maritime traffic under the Bridge by ensuring the Bridge functions properly through repairing and renovating the Bridge as necessary. Therefore, Plaintiff's claim satisfies the "situs" requirement because Plaintiff's injuries occurred upon the navigable waters of the United States.

Secondly, the Court addresses the "status" requirement. The Court finds that the facts show that Plaintiff was an employee engaged in maritime employment at the time of his injuries. This Court adopts the rationale of the Supreme Court that Plaintiff's work constitutes maritime employment because repairing and rebuilding the Bridge is an essential and integral element of the loading or unloading process of the maritime traffic flowing under the Bridge. *See Schwalb*, 493 U.S. at 45. Specifically, the Bridge lifts to permit passing vessels to navigate the Elizabeth River. Because of this purpose of the Bridge, Plaintiff's employment is essential when ensuring that the Bridge remains in safe, operating condition for maritime and commercial rail traffic to reach nearby loading facilities that rely on the South Branch of the Elizabeth River. *See, e.g.*, *Price*, 618 F.2d at 1060. Additionally, the LHCWA covers Plaintiff's claim because his injuries occurred on a navigable water situs while working for a maritime employer and both Parties do not dispute that Defendant is a maritime employer. *See Schwalb*, 493 U.S. at 45; *see also Price*, 618 F.2d at 1060. Hence, Plaintiff's claim satisfies the "status" requirement because Plaintiff's injuries occurred at a time where Plaintiff was engaged in maritime employment.

Because the LHWCA provides the exclusive remedy for Plaintiff's claim, the Court finds that this Court does not have subject matter jurisdiction to proceed on this matter.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED** based on the Court's lack of subject matter jurisdiction over Plaintiff's Complaint. Accordingly, this matter is hereby **DISMISSED**. Plaintiff's Motion for Partial Summary Judgment and Motion for Use of Prior State Court Action Depositions are hereby **DISMISSED** as **MOOT**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
June *13*, 2018

/s/
Raymond A. Jackson
United States District Judge